1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JUDITH Y., | ) | Case No. CV 19-5498-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

On June 24, 2019, plaintiff Judith Y. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly determined plaintiff had medical improvement; (2) whether the ALJ properly considered the credibility of plaintiff's

pain testimony; (3) whether the ALJ properly considered plaintiff's mental impairments; and (4) whether the ALJ's step four determination was supported by substantial evidence.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 9-17; Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-9.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly determined there was medical improvement, the ALJ properly discounted plaintiff's testimony, and her residual functional capacity ("RFC") determination was supported by substantial evidence. The court also concludes the ALJ erred at step four, but the error was harmless. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 46 years old on the alleged disability onset date, has attended some college.  AR at 196, 241.  Plaintiff has past relevant work as a budget analyst.  *Id*. at 233.

On May 27, 2015, plaintiff filed an application for a period of disability and DIB, alleging an onset date of February 14, 2014 due to lattice corneal dystrophy type 1, anxiety, and depression.  *Id*. at 241.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing.  *Id*. at 270-74, 282-89.

On March 6, 2018, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  *Id*. at 191-240.  The ALJ also heard testimony from Dr. Patrick G. McCaffery, a medical expert, and Susan L. Allison, a vocational expert.  *Id*. at 197-216, 232-38.  On May 9, 2018, the ALJ denied plaintiff's claim

for benefits.  *Id*. at 15-24.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since February 14, 2014, the alleged onset date.  *Id*. at 18.

At step two, the ALJ found that from February 14, 2014 through April 29, 2016 plaintiff suffered from the severe impairment of congenital corneal degeneration in both eyes, with the left eye essentially blind.  *Id*. at 19.

At step three, the ALJ found plaintiff's impairment, from February 14, 2014 through April 29, 2016, medically equaled the criteria in § 2.02 of 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings").  *Id*. at 21.  Accordingly, plaintiff was disabled, as defined by the Social Security Act, from February 14, 2014 through April 29, 2016.  *Id*.

The ALJ then applied the five-step sequential evaluation process to the period since April 30, 2016, and, at step two, found plaintiff had not developed any new impairment and her condition had improved with surgery.  *Id*.  Starting from April 30, 2016, plaintiff suffered from the severe impairment of status post bilateral corneal transplants.  *Id*.

At step three, the ALJ found, as of April 30, 2016, plaintiff's impairment did not meet or medically equal one of the listed impairments set forth in the Listings.  *Id*. at 21-22.  The ALJ found that medical improvement related to plaintiff's ability to work occurred as of April 30, 2016.  *Id*. at 22.

The ALJ then assessed plaintiff's RFC,[1] and determined that beginning April

---

[1]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

30, 2016, plaintiff had the RFC to perform a full range of work at all exertional levels, but with the non-exertional limitations that plaintiff: could occasionally climb ramps, stairs, ladders, ropes, or scaffolding; could frequently balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to fumes, odors, dusts, chemicals, and poor ventilation; should avoid hazards such as working near dangerous moving machinery or at unprotected heights; and could not perform commercial driving or work on parts smaller than half an inch.  *Id*.  Plaintiff must be able to wear glasses due to her monocular vision and would need to be off-task up to 10% of an eight-hour workday.  *Id*.

The ALJ found, at step four, plaintiff was capable of performing her past relevant work as a budget analyst since April 30, 2016.  *Id*. at 23.  Consequently, the ALJ concluded plaintiff's disability ended on April 30, 2016.  *Id*. at 24.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council.  *Id.* at 1-3.  The ALJ's decision stands as the final decision of the Commissioner.

### III.

### <u>STANDARD OF REVIEW</u>

This court is empowered to review decisions by the Commissioner to deny benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a

4

preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## <u>DISCUSSION</u>

**A.** **<u>The ALJ's Medical Improvement Finding Was Supported by Substantial Evidence</u>**

Plaintiff contends the ALJ erred when she found plaintiff no longer equaled Listing 2.02 as of April 30, 2016.  P. Mem. at 9-10.  Specifically, plaintiff argues the medical evidence does not support the ALJ's determination of medical improvement.

Once a claimant has been found to be disabled, he or she is entitled to the presumption of continuing disability. *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983).  The Commissioner bears the burden to show evidence of medical improvement. *Id.*  "Medical improvement is defined as 'any decrease in the medical severity' of a recipient's impairment" from when most recently found disabled and requires a comparison of prior and current medical evidence to show

changes. *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (internal citation to 20 C.F.R. § 404.1594(b)(1) and (c)(1) omitted).[2]  This standard applies in both ordinary termination and closed period cases. *Id*. at 876.  In closed period cases specifically, the baseline for comparison is the medical evidence used to determine the claimant was disabled. *Id*.  In other words, "the ALJ should compare the medical evidence used to determine the claimant was disabled with the medical evidence existing at the time of possible medical improvement." *Id*.

The ALJ determined plaintiff was disabled for the closed period between February 14, 2014 through April 29, 2016 because she equaled Listing 2.02. *See id*. at 19-21.  To meet Listing 2.02 – Loss of Central Visual Acuity, the "[r]emaining vision in the better eye after best correction is 20/200 or less." Listing 2.02.  In support of her finding, the ALJ cited plaintiff's medical records which reflect plaintiff suffered from lattice corneal dystrophy, requiring a cornea transplant surgery in each eye, as well as follow up surgeries. *See id*. at 20. Plaintiff had a deep anterior lamellar keratoplasty ("DALK" or cornea transplant surgery) in the left eye on March 4, 2010. *See id*. at 616, 669.  Plaintiff continued to experience symptoms affecting her vision in the left eye, including corneal haze, stromal haze, and surface irregularity. *See id*. at 630-31, 502.  On March 12, 2015, plaintiff had a DALK in the right eye after experiencing blurry vision and light sensitivity due to, among other things, corneal haze, stromal haze, and inability to tolerate scleral lenses. *See id*. at 495, 500, 508, 573, 594, 604, 616, 669.  Plaintiff underwent a phototherapeutic keratectomy ("PTK") in the left eye on January 27, 2016, to which she had a good response. *See id*. at 502, 508, 659, 741, 747. Although plaintiff was "doing well" following the DALK in the right eye, she had +8.07 bow tie astigmatism which made glasses difficult to tolerate. *Id*. at 659.  On

---

[2]    All regulations cited in this opinion are applicable to claims filed before March 27, 2017.

1   April 29, 2016, plaintiff's treating physician performed an astigmatism keratotomy

2   in the right eye to correct the issue.  *Id*. at 666.

3           The ALJ cited to the treating ophthalmologist's treatment notes and medical

4   expert's testimony to support her finding that plaintiff had medical improvement.

5   *See id*. at 20-22.  In June 2016, Dr. Anthony Aldave, a treating ophthalmologist,

6   observed plaintiff had a corrected vision of 20/40 in the right eye and 20/30 in the

7   left eye and good anatomic response, and opined plaintiff's visual acuity would

8   continue to improve.  *See id*. at 666-67, 670.  The medical expert, Dr. McCaffery,

9   testified the medical records reflect plaintiff equaled Listing 2.02 during the period

10  before her last surgery in 2016, but post-surgeries, she no longer met or equaled

11  the Listing because she had a corrected vision of 20/40 in the right eye and 20/30

12  in the left eye, as well as clear visual fields.  *See id*. at 200-08.

13          Plaintiff did not appear at her scheduled August 5, 2016 follow up

14  appointment with Dr. Aldave.  *Id.* at 669.  The record contains only one treatment

15  note after Dr. Aldave's June 2016 examination.[3]  On January 2, 2018, an

16  optometrist examined plaintiff and observed she had a corrected vision of 20/60 in

17  the right eye 20/80 in the left eye, with defects only in the center vision.  *Id*. at 742-

18  44.  The corresponding single field analysis from the examination indicated clear

19  visual fields.  *See id*. at 200, 745-46.  Plaintiff cites to this treatment note as

20  evidence that she did not have medical improvement.[4]  *See* P. Mem. at 9.  But this

21

22          [3]  In the Reply, plaintiff cites to a medical assessment form by Janet Kim as

23  support for her argument against medical improvement, but the form was undated.
    Reply at 1; *see* AR at 750-51.

24
            [4]  Plaintiff states the examination notes were completed by an ophthalmologist

25  named Dr. Geyer.  P. Mem. at 9.  Notwithstanding the fact the index indicates the

26  examiner was Miriam Gettas, the examiner was an optometrist, not an

27  ophthalmologist.  *See* AR at 744; *see also* 20 C.F.R. § 404.1513(a)(3) (licensed
    optometrists are acceptable medical sources for purposes of establishing visual

28  disorders only).

1  treatment note showed plaintiff's corrected visual acuity was not Listing level.  *See*

2  Listing 2.02.  Indeed, Dr. McCaffery reviewed this medical record and its

3  accompanying visual field analysis before rendering his opinion plaintiff no longer

4  met a Listing.  *See* AR at 200, 208.  Given Dr. McCaffrey's and Dr. Aldave's

5  interpretation of the available objective medical evidence and the fact that plaintiff

6  has not required additional treatment, there is substantial evidence to support the

7  ALJ's finding of medical improvement.

8         To the extent plaintiff argues the ALJ's RFC determination was not

9  supported by substantial evidence, the argument similarly fails.  As discussed

10  above, the medical evidence documents a corrected vision of 20/40 and 20/30 in

11  June 2016 and 20/60 and 20/80 in January 2018.  *See id*. at 666, 742.

12  Notwithstanding the ALJ's concerns about the reliability of the 2018 findings –

13  namely, the ALJ noted this measurement was not durational and was inconsistent

14  with the fact plaintiff was able to drive (*see id.* at 20) – the ALJ included

15  limitations to account for plaintiff's visual acuity in her RFC determination,

16  including no commercial driving, no work on parts smaller than half and inch, and

17  the ability to wear glasses.  *See id.* at 22.  Moreover, the ALJ considered plaintiff's

18  activities.  Plaintiff lived alone and was able to, among other things, perform

19  household chores, shop, drive, and take care of pets.  *See id*. at 20, 223, 648.  The

20  medical evidence and plaintiff's activities reasonably support the ALJ's RFC

21  determination.

22         Accordingly, the ALJ's finding of medical improvement was supported by

23  substantial evidence.

24  **B.     The ALJ Properly Considered Plaintiff's Pain Testimony**

25         Plaintiff argues the ALJ failed to address and consider her pain testimony.

26  P. Mem. at 10-11.  Specifically, plaintiff contends the ALJ failed to provide clear

27  and convincing reasons for discounting plaintiff's testimony concerning her

28

1    migraine headaches and consider it in conjunction with her light sensitivity.  *Id.*

2         At the hearing, plaintiff testified she suffered from a minimum of five

3    "daunting" migraine headaches every month, each one lasting one to three days,

4    and had been taking Topamax as treatment for ten years.  AR at 220, 226-27.

5    When she experiences a migraine, she has to lie down and sound is magnified.  *See*

6    *id.* at 226-27.  Plaintiff also testified she suffered from light sensitivity, and when

7    she has an abrasion in her eye she suffers from extreme pain that makes her

8    nauseated.  *Id.* at 221, 224-25.

9         The ALJ must make specific credibility findings, supported by the record.

10   Social Security Ruling ("SSR") 96-7p.  To determine whether testimony

11   concerning symptoms is credible, the ALJ engages in a two-step analysis.

12   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ

13   must determine whether a claimant produced objective medical evidence of an

14   underlying impairment "'which could reasonably be expected to produce the pain

15   or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d

16   341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

17   malingering, an "ALJ can reject the claimant's testimony about the severity of her

18   symptoms only by offering specific, clear and convincing reasons for doing so."

19   *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *accord Benton v. Barnhart*,

20   331 F.3d 1030, 1040 (9th Cir. 2003).  The ALJ may consider several factors in

21   weighing a claimant's testimony, including:  (1) ordinary techniques of credibility

22   evaluation such as a claimant's reputation for lying; (2) the failure to seek

23   treatment or follow a prescribed course of treatment; and (3) a claimant's daily

24   activities.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*,

25   947 F.2d at 346-47.

26        At the first step, the ALJ found plaintiff's medically determinable

27   impairments could reasonably be expected to cause the symptoms alleged.  AR at

28

23.  At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony.  The ALJ provided three reasons for discounting plaintiff's testimony: (1) her alleged symptoms were inconsistent with the medical evidence; (2) the lack of complaints of migraine headaches in her medical record; and (3) other inconsistencies in the record.  *See id.* at 19, 23.

The ALJ's first reason for discounting plaintiff's testimony was it was inconsistent with the medical evidence.  *Id.*; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2007) (lack of corroborative objective medical evidence may be one factor in evaluating credibility).  Specifically, the ALJ noted that other than a prescription for Topamax, the record does not contain any findings of migraine headaches.  *See AR at 19, 23.  The record reflects plaintiff was prescribed Topamax during portions of the time she was allegedly disabled.  *See, e.g., id.* at 70, 96, 108.  In August 2015, plaintiff's physician reduced the dosage to 25 mg. *See id.* at 94.  Plaintiff's treating physician did not list Topamax as one of her medications from January through July 2016 (*see id.* at 73, 76, 80, 83, 86), although plaintiff reported to her ophthalmologist that she was taking Topamax in May and June 2016.  *See id.* at 674, 678.  In support of her argument, plaintiff cites to her physician's listing of migraines under the problems sections of her treatment notes.  P. Mem. at 10-11; *see, e.g.*, AR at 79, 88, 100, 115.  But the problems sections merely refer to conditions plaintiff had been diagnosed with in the past and were neither current findings nor indicative of limitations.  Diagnoses of migraines are rarer in the records, and are typically unrelated to the reason for the visit and give no indication of a disabling condition.  *See* AR at 94, 102, 114; *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."); *Mitchell v. Astrue*, 2010 WL 1994695, at *9 (C.D. Cal. May 14, 2010) (diagnosis, by itself, does not prove

10

disability).  Other than a diagnosis and prescription, the record contains no findings of migraines, and specifically none that support her allegations of debilitating headaches that lasted for three days.  Thus, taken together, it was reasonable for the ALJ to conclude plaintiff's headaches were controlled by medication.  *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [disability] benefits.").

The ALJ's second reason for discounting plaintiff's testimony was the lack of subjective complaints in her medical record.  *See* AR at 19, 23; *see e.g., Schreffler v. Colvin*, 2014 WL 199067, at *5 (D. Ariz. Jan. 17, 2014) (plaintiff's own lack of subjective complaints was a clear and convincing reason for finding her not entirely credible); *Serrano v. Astrue*, 2013 WL 1283410, at *8 (N.D. Cal. Mar. 26, 2013) (plaintiff was not credible due, in part, to the lack of subjective complaints in the treatment records).   Plaintiff testified that she suffered a minimum of five migraine headaches each month, yet her treatment notes contained few complaints of migraines.  *See id*. at 93, 101, 672.

Finally, the ALJ found plaintiff's testimony less credible due to other inconsistencies in the record.  *See id*. at 23; *see also Tommasetti*, 533 F.3d at 1039.  The ALJ noted plaintiff reported she could not drive if she used her vision "a lot," yet she did not define "a lot" and continued to operate a motor vehicle.  *See* AR at 23, 648.  Plaintiff also alleged mental impairments and back pain, none of which were supported by the objective evidence.  *See id*.

Accordingly, the ALJ cited clear and convincing reasons supported by substantial evidence for discounting plaintiff's pain testimony.

**C.   The ALJ Properly Considered Plaintiff's Mental Impairments**

Plaintiff contends the ALJ failed to properly consider her mental impairments.  P. Mem. at 11-13.  Specifically, plaintiff alleges the ALJ erred at

step two by failing to find she suffered from a severe mental impairment and failed
to consider her mental limitations in her RFC determination.  *Id.*

### 1.   The ALJ Did Not Err at Step Two

At step two, the Commissioner considers the severity of the claimant's
impairments.  20 C.F.R. § 404.1520 (a)(4)(ii).  "[T]he step-two inquiry is a de
minimis screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at
1290.  The purpose is to identify "at an early stage those claimants whose medical
impairments are so slight that it is unlikely they would be disabled even if their
age, education, and experience were taken into account."  *Bowen v. Yuckert*, 482
U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  An impairment is "not
severe" when the impairment would have no more than a minimal effect on a
claimant's ability to work.  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005);
SSR 85-28, 1985 WL 56856, at *3.

Contrary to plaintiff's contentions, the record plainly reflects the ALJ
considered plaintiff's allegations of mental impairments at step two.  The ALJ
noted plaintiff had the medically determinable impairments of unspecified
depressive disorder, unspecified anxiety disorder, and alcohol use disorder.  AR at
19.  But the mere diagnosis of an impairment does not establish that it was severe.
*See Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the
[claimant] clearly does suffer from diabetes, high blood pressure, and arthritis,
there is no evidence to support his claim that those impairments are 'severe.'").
The ALJ noted plaintiff was taking psychiatric medications but saw a psychiatrist
only on two occasions.  AR at 19.  Neither the psychiatrist's treatment notes nor
opinion of the consultative psychologist supported any durational limitations.  *See
id*.  The ALJ then considered the four broad areas of mental functioning, and
determined plaintiff only had a mild limitation in concentrating, persisting, or
maintaining pace, and no limitation in the other areas.  *See id.* at 19-20.  The ALJ

noted, among other things, plaintiff had normal thought processes and was able to drive, take public transportation, shop, attend meetings, handle her finances, participate in social engagements, and maintain her household. *See id*. As such, the ALJ properly considered plaintiff's mental impairments and substantial evidence supports her finding of non-severity. *See* 20 C.F.R. § 404.1520a(d)(1).

Further, even if the ALJ had erred, the error would be harmless because the ALJ considered plaintiff's allegations in the RFC determination as discussed below. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the ALJ considered it in the RFC assessment).

### 2.    The RFC Determination Was Supported by Substantial Evidence

An ALJ is required to consider all of a claimant's limitations imposed by both severe and non-severe impairments in his RFC determination. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Here, the ALJ considered plaintiff's alleged mental limitations.

Plaintiff testified she was sad all the time, had almost daily crying spells, and had anxiety. AR at 228-30. Plaintiff was prescribed Prozac and Xanax, but only sought treatment from a psychiatrist, Dr. Robert Imani, twice during the closed period. *See id*. at 231, 612-13, 653-54. Dr. Sherri Love, a consultative psychologist, examined plaintiff on December 27, 2015. *Id*. at 646-50. Dr. Love observed plaintiff had an anxious mood and otherwise normal findings. *See id*. at 649-50. Dr. Love diagnosed plaintiff with unspecified depressive disorder, unspecified anxiety disorder, and alcohol use disorder. *Id*. at 650. Dr. Love opined plaintiff had moderate limitations in her ability to deal with changes in a routine setting, but otherwise had no or only mild limitations. *Id*.

In reaching her RFC determination, the ALJ considered plaintiff's testimony and the medical evidence. *See id*. at 19-20, 23. The ALJ noted that there was little

medical evidence concerning plaintiff's alleged mental impairments.  *See id*. at 19.
The ALJ rejected Dr. Love's opined moderate limitation because of the lack of a
durational medical evidence in the record.  *See id*. at 19. The ALJ also discounted
plaintiff's testimony due to a lack of treatment or anything in the record
documenting plaintiff's alleged crying spells and anxiety.  *See id*. at 23; *see also
Tommasetti*, 533 F.3d at 1039 (failure to seek treatment is a clear and convincing
reason to discount credibility).  Plaintiff testified she could not afford Dr. Imani.
AR at 231.  But although the inability to afford treatment is a good reason for not
seeking treatment, plaintiff admits she could have obtained treatment through
Medi-Cal.  *See id*.; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that
the failure to seek treatment may be a basis for an adverse credibility finding unless
there was a good reason for not doing so).  Plaintiff did not challenge the ALJ's
credibility determination with regard to her statements about her mental
limitations.

Although there is some evidence to support plaintiff's alleged mental
symptoms, the ALJ plainly considered the evidence, which can also reasonably
support affirming the ALJ's decision. *See Aukland*, 257 F.3d at 1035.  As such,
this court may not substitute its judgment for the ALJ's.

**D.    The ALJ Committed Harmless Error at Step Four**

Plaintiff argues the ALJ erred at step four.  P. Mem. at 13-17.  Specifically,
plaintiff contends the ALJ erred by: (1) failing to incorporate a requirement for
additional time to perform work due to her migraines and visual impairment in her
hypothetical to the vocational expert; and (2) failing to resolve a conflict between
the vocational expert's testimony and the Dictionary of Occupational Titles
("DOT").  *Id*.

At step four, the claimant has the burden to show he cannot perform his
past relevant work.  *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir.

2001).  The regulations permit but do not require that an ALJ consult a vocational expert at step four.  20 C.F.R. § 404.1560(b)(2) ("We may use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."); *Hopkins v. Astrue*, 227 Fed. Appx. 656, 657 (9th Cir. 2007) ("[T]he ALJ was not required to call a vocational expert at step four."); *Matthews*, 10 F.3d at 681 (the testimony of a vocational expert was unnecessary when the claimant was unable to meet his burden and show that  he was unable to return to his past relevant work).  But the ALJ has a duty to make the requisite factual findings to support his conclusion.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

In reaching the determination at step four that plaintiff could perform her past relevant work, the ALJ made the requisite factual findings.  The ALJ determined plaintiff had the RFC to perform a full range of work at all exertional levels with certain non-exertional limitations.  AR at 22.  The ALJ determined plaintiff's past relevant work as budget analyst was skilled, sedentary work.  *Id*. at 23.  The ALJ then concluded that beginning April 30, 2016, plaintiff had the RFC to perform her past relevant work.  *Id.*

## 1.    The ALJ Posed a Complete Hypothetical

Plaintiff argues the ALJ posed an incomplete hypothetical to the vocational expert because she failed to address plaintiff's need for time accommodations.  P. Mem. at 13-14.  Plaintiff is incorrect.  The ALJ recognized plaintiff required time accommodations due to her vision impairment, whether for fatigue or pain, and incorporated time limitations in her hypotheticals.  *See* AR at 236.  Based on the medical evidence and opinions, the ALJ determined plaintiff would need to be off-task 10% of the workday in her RFC determination.  *Id*. at 22.  The vocational expert testified there would be no employment for the hypothetical worker if she

1    were off task 15% or more of the workday.  *Id.* at 236.

2       **2.    The Vocational Expert's Testimony Did Not Conflict with the**

3            **DOT**

4       Plaintiff also contends the ALJ erred at step four by failing to address the

5    "possible conflict" between the vocational expert's testimony and the DOT.  P.

6    Mem. at 15-17.  Specifically, plaintiff argues the ALJ had an affirmative duty to

7    inquire whether the vocational expert's testimony was consistent with the DOT.

8    *Id*. at 15-16.

9       Although the regulations do not require an ALJ consult a vocational expert

10   at step four, if a vocational expert provides testimony concerning the requirements

11   of a job, then an ALJ may not rely on the testimony regarding the requirements of

12   a particular job without first inquiring whether the testimony conflicts with the

13   DOT, and if so, the reasons for any conflict.  *Massachi*, 486 F.3d 1152-53; SSR

14   00-4p (an ALJ "has an affirmative responsibility to ask about any possible conflict

15   between the [VE's testimony] and information provided in the DOT").  "In order

16   for an ALJ to accept vocational expert testimony that contradicts the [DOT], the

17   record must contain persuasive evidence to support the deviation."  *Pinto*, 249 F.3d

18   at 846 (internal quotation marks and citation omitted).  "Evidence sufficient to

19   permit such a deviation may be either specific findings of fact regarding the

20   claimant's residual functionality, or inferences drawn from the context of the

21   expert's testimony."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997)

22   (internal citation omitted).

23      The ALJ failed to ask the vocational expert whether her testimony conflicted

24   with the DOT.  This error, however, was harmless because there was no conflict.

25   *See Massachi*, 486 F.3d at 1154 n.19 (error is harmless when there is no conflict or

26   the vocational expert has provided sufficient support for her conclusion).  Plaintiff

27   argues there was a conflict between the visual requirements of the job as described

28

by the vocational expert and the DOT.  *See* P. Mem. at 15-17.  Specifically, the DOT description fails to explicitly specify the job requires working on a computer.  *See id*.  Although the DOT description does not directly refer to computer usage, the responsibilities clearly require computer work.  *See* DOT 161.117-010.  Further, the vocational expert testified that all accounting work requires computers and she factored that into her responses.  *See* AR at 237; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony."); *Pinto*, 249 F.3d at 845 ("The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations.").

Accordingly, the ALJ's step four finding was supported by substantial evidence.  The ALJ posed a proper hypothetical at step four.  Although the ALJ erred when she failed to inquire whether there was a conflict between the vocational expert's testimony and the DOT, this error was harmless.

## V.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: November 30, 2020

SHERI PYM
United States Magistrate Judge